**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LINDA D. DEAL,**

        **Plaintiff,**

**-vs-**                                                  **Case No. 8:08-cv-1651-T-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED**.

### *I. BACKGROUND*

**A.    Procedural History**

Plaintiff filed for a period of disability, DIB and SSI benefits on May 10, 2004. R. 72-77. She alleged an onset of disability on September 20, 2003, due to chronic pain syndrome, tibia and fibula fracture left leg, contusions, ligament damage, pinched nerve, effusion at ankle, spine, lumbar herniation, disc dessication and problems with tailbone and neck, beginning with a bicycle accident

when she was hit by a car. R. 42, 72, 75, 91, 103. She also testified to problems related to her menstrual cycle including severe cramps, hypertension, and fatigue, and she was awaiting a referral to a psychiatrist at the time of the hearing. R. 363.

Her application was denied initially and upon reconsideration. R. 12. Plaintiff requested a hearing, which was held initially on September 16, 2006 and supplemented on March 7, 2007, before Administrative Law Judge Tony L. Eberwein (hereinafter referred to as "ALJ"). R. 357-70. In a decision dated April 18, 2007, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 12-23. Plaintiff timely filed a Request for Review of the ALJ's decision, and the Appeals Council ("AC") denied Plaintiff's request on July 29, 2008. R. 3-6. Plaintiff filed this action for judicial review on August 22, 2008. Doc. No. 1.

### B. Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of "pain from the left toes up to the neck and head . . . [and] injury to toes, foot, ankle, tibia and fibula, knee pelvis, tailbone, lumbar spine, mid back, neck and the neck and back injuries restricting arm movement." R. 103. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from status-post hairline fracture at the proximal lateral tibial plateau, herniated nucleus pulpsus at L4-5, chronic neck and back pain syndrome, fibromyalgia, and hypertension, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 15. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of sedentary work, as she could lift five pounds and would require a sit/stand option at her discretion; with occasional stooping; and avoidance of all kneeling, squatting, crawling, and climbing; and avoidance of all reaching with the upper extremities. R. 15. In making this determination, the ALJ found that Plaintiff's allegations regarding

her limitations were "extremely inconsistent with the medical evidence of record. R. 20. Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work. R. 21.

Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a charge account clerk, surveillance system monitor, and parimutuel ticket checker. R. 22. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 22.

Plaintiff now asserts five points of error. First, Plaintiff contends the ALJ erred by finding that Plaintiff might have received "minor coaching" from counsel regarding a mental impairment. Second, she argues that the ALJ erred in failing to order a psychological consultative examination. Third, Plaintiff contends that the ALJ (and the AC) erred in finding that her mental impairment was not severe. Fourth, she claims the ALJ erred by finding she had the RFC to perform jobs in the national economy contrary to her treating doctor's statements. Fifth, she asserts that the ALJ erred by improperly applying the pain standard and evaluating her credibility.

Because the Court finds that the AC's failure to order a psychological consultative examination was error in light of new evidence of Plaintiff's mental impairments, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C.

§ 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## *III. ISSUES AND ANALYSIS*

**A.     Plaintiff's mental impairment**

Plaintiff argues that the medical evidence reflected that she had severe depression and the ALJ and AC erred in failing to recognize her depression as severe. The Commissioner responds that Plaintiff failed to show that her mental condition was severe and that it caused limitations on her ability to work, or interfered with her ability to work for any consecutive twelve-month period.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The ALJ discussed Plaintiff's alleged mental impairments as follows:

> However, the claimant's representative has raised the possibility of an additional psychological component. In particular, medical records dated October 24, 2006, from the Directions for Mental Health Clinic were submitted by the claimant's attorney. During the assessment phase of the interview, the claimant stated she was sad about her situation but denied any depression. Prozac medication had been prescribed by Dr. Kuhn only six months prior to this visit for mood swings before, during, and after menstruation as related by the claimant. There had been no attempts or thoughts of self-harm and her risk assessment was rated as low.

R. 15. The ALJ determined of his own accord (rather than on the basis of the opinion of a reviewing psychologist) that Plaintiff's degrees of limitation in functioning were all mild and that she had no episodes of decompensation. R. 15. Based on the evidence before him, the ALJ found Plaintiff's mental impairment was not severe. R. 15. In discussing Plaintiff's RFC, the ALJ specifically discussed Plaintiff's mental impairments as follows:

-5-

> Concerning her mental health issues, the claimant testified that she required psychiatric treatment for cycle issues and never mentioned depression at all during her testimony. The undersigned noted that the representative has argued that the claimant quite possibly has a large psychological component in addition to her physical health issues. This is contradictory with the medical evidence which has clearly documented the claimant's repeated denial of depression to her treating physicians. In fact, the claimant reported to the examiner at Directions for Mental Health that the medication prescribed by Dr. Kuhn was due to symptoms before, during, and after her menstruation cycle, because "I get PMS really bad." The claimant did not even report depression when she filed her application and completed the necessary forms in association with her claim. Despite the fact that the Disability Report specifically requests information about all conditions affecting the ability to work, she did not include depression as an impairment and/or problem. It certainly has not escaped the attention of the undersigned that on the date of November 30, 2006, she reported a history of problems with depression since her accident in 2003, to the consulting orthopedist, Dr. Shyngle. This was shortly after the claimant's visit to Directions for Mental Health (where she denied depression) and after the date of her first hearing. Some minor coaching by her representative is not completely out of the realm of possibilities, especially since prior to the date of the consultative examination, the claimant had routinely denied problems with depression.

R. 20.

The Commissioner contends that the ALJ correctly found that the record contained no evidence that Plaintiff had any resulting limitations from her mental impairments, citing R. 15, 260, 306. The Commissioner argues that the suspicion of the existence of a mental impairment or the taking of one medication for that impairment does not establish that it would interfere with Plaintiff's ability to perform basic work activities; therefore, Plaintiff's leap to the conclusion she would miss work for PMDD based solely on a general discussion in medical journal article is not conclusive of the issue as to Plaintiff's limitations.

It is true that Plaintiff denied having depression to the licensed interviewer at the Directions for Mental Health Clinic as of October 2006; he noted her reporting that she "gets PMS really bad"; on the symptom checklist, Plaintiff listed only "distracted easily" under mood problems and did not select the obvious category "very depressed." R. 305-06. Plaintiff also consistently denied depression as noted in the records from the American Family & Geriatric Care (AFGC) from January 8, 2004 to

October 26 2005. R. 18, 207, 208, 210, 211. Plaintiff did not list depression as an impairment in documents associated with her claim for benefits and she failed to mention depression as an issue during her testimony at the September 19, 2006 hearing, although she did mention that she was being referred to a psychiatrist but had not yet obtained approval from the insurance company. R. 91, 103-05, 363.

Plaintiff argues that Dr. Kuhn of Community Health Centers of Pinellas diagnosed Plaintiff with premenstrual dysphoric disorder (PMDD) in March 2006 and prescribed Prozac which he renewed in August 2006. R. 250, 260; R. 306 (indicating Plaintiff was prescribed Prozac for mood swings in March 2006). Plaintiff argues – based on a general description of the condition from the University of Virginia Health System website – that PMDD causes symptoms similar to other mood disorders, such as major depression, is more severe than premenstrual syndrome, and "can be so severe that the level of functioning at home, work or interpersonal relationships is so impaired during the symptomatic time period." Doc. No. 20 at 7.

Plaintiff cites to general statements about the condition; no physician or psychologist noted such a debilitating level of mood disorder that Plaintiff could not perform the requirements of work. Dr. Kuhn prescribed Plaintiff Prozac to be taken starting one week prior to her period, implying that the condition was cyclical and related to menstruation, as the ALJ noted, and not the motor vehicle accident. Moreover, Plaintiff herself did not mention general depression until after the first hearing (September 2006) when she went for the consultative orthopedic examination with Dr. Shyngle in November 2006. R. 289. At that examination, she told Dr. Shyngle that "she also has had problems with depression since her [motor vehicle accident]." R. 290. The ALJ noted Plaintiff's revision to her self-reported medical history that would add a mental impairment where one had not been mentioned previously: "It certainly has not escaped the attention of the undersigned that on the date of November 30, 2006, she reported a history of problems with depression since her accident in 2003,

to the consulting orthopedist, Dr. Shyngle. This was shortly after the claimant's visit to Directions for Mental Health (where she denied depression) and after the date of her first hearing." R. 20.

Plaintiff cites her testimony at the hearing in September 2006. Doc. No. 20 at 4. She testified that she was having problems with her monthly cycle the last two days of the month with severe cramps, hypertension, and fatigue. R. 363. She was waiting on the authorization from the insurance company "to go to psychiatric for those symptoms from the monthly cycle, because [she] was sent to a gynecologist" and she was waiting for a psychological referral at that point. R. 363-64.

The record before the ALJ as it stood at the time of his decision included contrary and conflicting elements. Plaintiff herself and her primary care doctor believed any mental health condition was related to her menstrual problems and affected her, by her own admission, two days per month. As the ALJ also noted she was not fully compliant with medical advice particularly about quitting smoking, which contributed to her condition. She was also not altogether candid about her activities and limitations. From these discordant sources, the ALJ was charged with drawing inferences and reaching conclusions. The ALJ's determinations here are not the only ones that could be drawn, but they are a reasoned and reasonable interpretation of the equivocal and controverted evidence. It is in cases such as this one that the mandated standard of deferential review should be fully acknowledged and respected. The ALJ's decision finding Plaintiff's mental limitations were not severe was based on the record before him was based on substantial evidence.

**B. Alleged Bias**

Plaintiff argues that the ALJ's statement suggesting that "minor coaching" by her counsel might have spurred Plaintiff to belatedly claim she suffered from depression shows his bias and the case should be remanded to a different ALJ. The Commissioner argues that Plaintiff failed to carry her burden of showing ALJ bias.

Social Security Commission proceedings must meet the due process requirements of the Fifth

Amendment. *Richardson v. Belcher*, 404 U.S. 78, 81 (1971). The district court will assess whether a claimant was afforded a full and fair hearing and may remand the case to the Commissioner with instructions to afford the claimant fair treatment. *See, e.g., Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Grant v. Shalala*, 989 F.2d 1332, 1346 (3d Cir. 1993); *Pearce v. Sullivan*, 871 F.2d 61, 63-64 (7th Cir. 1989).

The due process requirement should be applied even more strictly in administrative proceedings than in judicial proceedings, because of the lack of procedural safeguards and the unique role of the ALJ. *Hummel v. Heckler*, 736 F.2d 91, 93 (3d Cir. 1984) (citing *N.L.R.B. v. Phelps*, 136 F.2d 562, 563-64 (5th Cir. 1943)). Regulations provide that a Social Security claimant should seek the disqualification of an ALJ at the earliest opportunity. 20 C.F.R. §§ 404.940, 416.1440. If the ALJ refuses to step aside, the claimant can seek an administrative appeal and subsequently obtain judicial review. *Grant*, 989 F.2d at 1346. A claimant pursues review of the findings of the Appeals Council in the district court under 42 U.S.C. § 405(g). *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).

Plaintiff sought to disqualify the ALJ in her memorandum of issues to the AC based on the ALJ's alleged bias. R. 371. Plaintiff's counsel took exception to the ALJ's suggestion that Plaintiff's counsel – through "minor coaching" – could have suggested such a revisionist strategy to Plaintiff to describe her mental health history. "Some minor coaching by her representative is not completely out of the realm of possibilities, especially since prior to the date of the consultative examination, the claimant had routinely denied problems with depression." R. 20. The affidavit of Plaintiff's hearing counsel, Barry Salzman, Esq., was submitted the AC, and he outlined a lengthy legal career specializing in social security work and denied "coaching" Plaintiff with respect to her hearing testimony or to statements given to medical examiners or regarding the consultative examination. R. 345-47. Mr. Salzman stated at the time of the hearing that he believed the ALJ would refer Plaintiff for a consultative psychological examination "inasmuch as she presented herself as much more

-9-

physically disabled than her medical records would support." R. 346. In a letter to the ALJ in December 2006, he "expressed concern about whether the claimant suffers from a psychological disorder that may explain the apparent inconsistency between her medical work-up and her subjective presentation. Those concerns existed throughout my representation of this claimant and were based on over 30 years of dealing with disability claims." R. 346.

Mr. Salzman's educated guess that there may have been a psychological component to Plaintiff's condition is arguably supported by the notes of Dr. de la Garza, Plaintiff's treating pain management physician, who noted "multiple psychiatric complaints." R. 285. Although the ALJ's speculation about "the possibility" of counsel's "minor coaching" was inappropriate and not relevant to his decision, it is not grounds for reversal and remand to a different ALJ because of bias, as Plaintiff alleges, because Plaintiff was afforded a "full and fair hearing."

The ALJ was entitled to doubt Plaintiff's credibility based on her conduct in giving a revisionist mental health history to the consultative examiner; she misrepresented the severity and length of her mental condition and the ALJ was entitled to discount the statement and consider that conduct in determining her credibility. "The testimony provided by the claimant was extremely inconsistent with the medical evidence of record. This may not be a conscious intention on the part of the claimant to provide misleading information; nevertheless, the inconsistencies suggest that the testimony provided by the claimant may not be entirely reliable." R. 20. However, based on the records of Dr. de la Garza submitted *to the AC* (but not before the ALJ), which suggest Plaintiff may have a somatization disorder (R. 336), it may be part of Plaintiff's disorder that she amplifies her symptoms. A somatization disorder is a metal disorder characterized by presentation of a complicated medical history and of physical symptoms referring a variety of organ systems, but without a detectable or known organic basis. STEDMAN'S MEDICAL DICTIONARY at 571 (28th ed. 2006).

There are references, as Plaintiff argues, of "suggestions" of mental health issues in the records of the treating pain management physician, Dr. de la Garza, who saw Plaintiff for the first time on August 24, 2006, three weeks before the hearing, and noted "review of systems is positive for multiple psychiatric complaints" (R. 285); however, he did not diagnose what psychiatric complaints or describe any mental restrictions (he is a pain management specialist, not a psychiatrist). He noted at a second visit one month later and just three days *after* the hearing that, "chronic pain behavior likely motivated by Social Security disability and the loss of income at this time. This patient has a superimposed psychological feature which has not been adequately examined at this time. She will be a good candidate for interventional therapy in addition to psychiatric testing, possibly and/or pain psychologist referral." R. 284 (emphasis added). Dr. de la Garza was apparently told by Plaintiff at the visit on September 22, 2006 that she was going to have a psychiatric examination ordered by the ALJ, because the physician noted in her records that he concurred with that decision. R. 284. In reality, on September 20, 2006, the ALJ requested an orthopedic examination (R. 287) and no psychiatric consultative examination was ever ordered by the ALJ.

Plaintiff contends that the ALJ failed to properly develop the record by failing to order a psychological consultative examination, as requested by her counsel in a letter to the ALJ dated December 9, 2006. R. 128-29. The ALJ has a duty to fully and fairly develop the record, *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). *See Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997). In this case, Plaintiff was represented, and the ALJ's decision not to order a psychological consultative examination, based on the equivocal evidence from Dr. de la Garza and Plaintiff's consistent refusal to assert she had depression, as it stood before him at the time, was based on substantial evidence.

### C. New evidence before the AC

-11-

Plaintiff contends that the Appeals Council erred in not reversing the ALJ's decision based on evidence from Dr. de la Garza and Dr. Corzo submitted to the AC *after* the ALJ's decision. When a plaintiff submits additional evidence to the Appeals Council and the Appeals Council denies review, the court must determine whether the Commissioner's decision is supported by substantial evidence on the record as whole. *See Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007); *Hummel v. Astrue*, No. 8:06-CV-725-T-EAJ, 2007 WL 2492460, *7 (M.D. Fla. Aug. 30, 2007) (under *Ingram*, the court reviews whether the decision to deny benefits is supported by substantial evidence in the record as a whole, including evidence submitted to the Appeals Council).

In records submitted to the AC, on October 26, 2006, Dr. de la Garza noted:

> She has excessive worries over her bilateral feet, which are essentially normal to inspection. However, she wants an evaluation by a podiatrist. She continues to have multiple complaints in these areas, and seems to be preoccupied about obtaining Social Security disability for her financial difficulty. I advised the patient that I was unable to comment on any disability previous to when I first saw her, which was approximately 1 month ago. In my estimation, she has not failed all therapist [sic] at this point. I would like to have a functional capacity evaluation performed before considering support for chronic disability related to intractable pain or injury. She should also undergo a psychiatric evaluation for a question of *somatization disorder* versus other. . . . Multiple somatic complaints of unexpressed importance.

R. 336 (emphasis added). On December 7, 2006, Dr. de la Garza opined again that Plaintiff had a questionable somatization disorder. He referred her to Dr. Singh[1] for evaluation for somatization. R. 335. On March 22, 2007, he noted that she had been evaluated by Directions for Mental Health (erroneously noting that it was at the order of the ALJ) and in his opinion, there remained a "question of high somatization index"; he planned to review the records from her psychiatrist. R. 329. The only time-relevant records from Direction for Mental Health are actually dated October 24, 2006 (R. 305-06), five months before this visit to Dr. de la Garza, and indicate Plaintiff was put on Prozac because she gets "PMS really bad," but she denied depression; she was not evaluated specifically for

---

[1]There are no records from a Dr. Singh in the administrative record.

the somatization disorder that Dr. de la Garza, as a pain management specialist, suspected based on her amplified symptoms given her mild to moderate level of physical impairment. R. 306.

Less than one month after the ALJ's decision on April 24, 2007, Plaintiff met with Dr. Corzo for a psychiatric evaluation. Dr. Corzo's handwritten notes dated May 7, 2007 were submitted by Plaintiff to the AC. R. 359-61. He diagnosed Plaintiff with acute stress disorder, major depression, anxiety attacks, and rule out PMDD. R. 361. Again, there is no specific assessment of somatization disorder, nor is there a mention in Dr. Corzo's notes that he reviewed or was aware of Dr. de la Garza's opinion that Plaintiff might have such a condition.

The Commissioner argues that the new evidence from Dr. de la Garza revealed no new *physical* findings, but merely showed Plaintiff was not having side effects from her current medications and had no new complaints or symptoms. The Commissioner does concede that the notes from Dr. de la Garza indicated a high "somatization index" and a "superimposed psychological feature not adequately examined," but argues that because he still planned to treat her physical pain symptoms with steroid injections, the new medical records from him would not have changed the ALJ's decision. The Commissioner argues that none of the evidence from Dr. de la Garza would have made any difference in changing the ALJ's decision because of his statements already before the ALJ that Plaintiff's chronic pain behaviors were likely motivated by "other factors," namely Social Security disability and loss of income. Doc. No. 27 at 17.

The ALJ took Dr. de la Garza's statement somewhat out of context and quoted only a portion of it. The full quote from Dr. de la Garza recognized that Plaintiff had "chronic pain behavior likely motivated by Social Security disability and the loss of income at this time" which, the physician opined, was part of her "superimposed psychological feature which has not been adequately examined at this time. She will be a good candidate for interventional therapy in addition to psychiatric testing, possibly and/or pain psychologist referral." R. 284. Dr. de la Garza did not believe Plaintiff to

-13-

merely be malingering, as the Commissioner implies, rather he believed that her pain was related to a "superimposed psychological feature" which required further assessment. It became clear in his subsequent assessments of Plaintiff that she had "cervical difficulties" present on MRI, but there remained the question of somatization disorder which was still "unclear" to him, so he referred her to Dr. Singh for evaluation. R. 335. Her primary care physician at AFGC referred her to a psychiatrist for management of "depression" on April 11, 2007; these records were also submitted to the AC. R. 337 ("AC-1").

The evidence from Dr. Corzo, the Commissioner argues, would also not be likely to change the ALJ's decision because Dr. Corzo "did not relate these diagnoses to the period prior to the ALJ's decision" and did not set forth specific functional mental limitations. Doc. No. 27 at 18. Dr. Corzo's diagnosis of Plaintiff with significant mental health impairments would, at a minimum, relate back to Dr. de la Garza's references in his notes to the possibility that Plaintiff suffered from a somatization disorder which caused her to amplify her pain symptoms; he first mentioned this potential diagnosis in August 2006. It was error for the AC not to remand to the ALJ for consideration of Dr. Corzo's records and/or to the ALJ to order a psychological consultative examination, and referral to state agency physicians for assessment of functional limitations as a result of her mental impairments.[2]

Plaintiff argues that because acute distress disorder is the development of anxiety, and generally the "symptoms of which occur within one month after exposure to an extreme traumatic stressor," Plaintiff surmises she must have begun suffering from it around the time she was struck by the car while on her bike, *i.e.,* at the alleged onset date. Plaintiff's argument in this regard is based on supposition. The ALJ will be expected to determine on remand the alleged onset date for any mental impairments. In addition, on remand the ALJ will determine whether Plaintiff has the RFC

---

[2] The ALJ made these assessments himself in his decision of April 18, 2007. R. 15.

-14-

to perform jobs in the national economy considering evidence of all functional limitations from mental impairments.

### *IV. CONCLUSION*

Accordingly, the decision of the Commissioner is hereby **REVERSED** under sentence four of 42 U.S.C. § 405(g) and this case is hereby **REMANDED** to the Commissioner of Social Security. Upon remand, the ALJ will afford Plaintiff the opportunity for a supplemental hearing with testimony from a vocational expert as to what work she could perform, considering her vocational factors and all her functional physical and mental limitations.

The Clerk of the Court is hereby directed to enter a separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure and thereafter to close the case.

**DONE** and **ORDERED** in Orlando, Florida on September 9, 2009.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record